On behalf of the statetroopers and COs, I would reserve five minutes for rebuttal. Essentially, Your Honor, this case boils down to the old aphorism, how you characterize this case depends on whose ox is being gored. And in our case, we think it's our ox. How is it being gored? Just back up a second. How is your ox being gored at all? I think we can agree that New Jersey is acting not as a regulator but as an employer in this regulation. And if we can start from that presumption, and we're talking about rational basis review, how is your ox being gored at all by the employer simply taking steps which, at least on their face, seem to be reasonable, measured steps to protect the integrity of what it does? Okay. Well, first I would say that I don't think there's any special exceptions because you act as the employer when you're dealing with such a defined property interest as this one. Boo, do you know how many cases it says that? Isn't there a big interest in what the government can do when it acts as a regulator versus when it acts as an employer? It's mechanic, and it's a whole line of cases. The employee speech cases, I mean, this certainly is one. The employer dismissing an employee for certain reasons, insubordination because the employer doesn't like what the employee is saying, whether or not that's done as an employer or as a governmental entity seeking to regulate is a gigantic difference. I don't know that it would make a difference in this case because, in this case, the interest being addressed is state-created. I mean, we all agree that the state has created the interest here. How has it created the interest? Well, they have created the interest by giving the 21 officers, in this case, a law license. They didn't give the law license. Did they subsidize? I assume they went to law school. Yes, they did. I mean, they did subsidize. They did go to law school. Were subsidies available for other employment as well or just for law school? I think it's just general education. That's how the subsidy was created in this case. So, you know, I think there's a fundamental distinction between, you know, some of the cases that you cited and what we're dealing with here. I don't think they could sort of lead them down the garden path and say, okay, this is okay to do, and encourage them to do that and say, if you go to law school for five years and then go for an additional year and pass the bar, we're going to give you a license. But, by the way, a couple years later, we're going to pull out the carpet from underneath. That's not a constitutional claim. Well, I guess there is a question as to the nature of the encouragement. I mean, Judge Wolfson said, you know, if we had them openly encouraging, et cetera, et cetera. This was thrown out on a dismissal motion, which means, you know, the pleading wasn't sufficient in that regard. But the pleading did talk about promissory estoppel and did talk about the encouragement. So I guess that's the issue of whether you should have been able, whether there's a plausible basis for you to be able to proceed. I think we're certain. And, you know, it isn't as if they, you know, got what they were entitled to in a vacuum. And I think it was twofold what the parties were trying to achieve here. One, they encouraged them to go to law school because they thought, well, you're going to be a better employee for us. But certainly the people that undertook to go and take that sacrifice didn't think, well, it's just because I want to be a better state trooper. It was because they had the expectation all along that they were going to work. Well, excuse me. What was the expectation? I'm sorry. Go ahead. What was their expectation? The expectation was you would have a law license and be able to use it. You don't just expect to get the license and it will be an invaluable piece of paper. You can use it. You just couldn't use it while you're a state trooper. Not when they originally got it. That is the fundamental distinction between this case and all the other cases. The law schools now tell the people that even if you don't practice law, it's worthwhile going to law school because it will give you important understanding of other things. The law schools do not now encourage people to come to law school so you will practice law. Sure. And the state could have done that. Sure. What's the promissory? The state could have done that in this case. They could have simply said, hey, you can have a job as a trooper, but by the way, you can go get a license to practice law or medicine or whatever else, but we're not going to let you use that. Do you know what a Terry stop is, for example? Did they make a promise? What did they do specifically that you've averted in the complaint that gives rise to the property interest rather than a unilateral expectation? Well, by any classic sense, having a license is a property interest, and there was no real restrictions placed on that. They had an absolute property interest or all kinds of restrictions based on all kinds of licenses. Yes. Well, I mean, I agree with you, but certainly in this particular case, you know, they said and everyone understood it to be a license to practice. And by, you know, any case that is looked at, you know, the interest in a law license of said is a property interest. I don't know how we escape that. They took away secondary employment, right? False, Your Honor. I don't believe that. I mean, I think the 21 people understand, you know, that they have been administratively disbarred or suspended, however you want to call it. I don't, you know, the State doesn't use that ugly term, but the net effect is they're suspended from practicing law. It used to be that the FBI agents had to have law degrees in my time. I don't know about in Midget's time, but in my time. But they weren't expected to practice law. That's fine, Your Honor. And I think going into it, they understood that as an FBI agent, you couldn't get a second job as an attorney. But here, the fundamental distinction in this case is they cut off the opportunity to practice law midstream. They encouraged it from day one throughout their tenure of employment, and then in the middle of employment said, we're going to pull the plug on you. And they should have had a hearing before they did that? I think they had to have noticed an opportunity to be heard. What that constitutes, we're not dealing with today. So what would the opportunity to be heard say? The end, the regulatory result would have been the same. I don't agree. I think that if we had the opportunity, these 21 individuals, there's 21 good attorneys that can, you know, muster an argument to indicate, well, the reason you want to pass this regulation doesn't make any sense. And I think they could be able to prevail in that environment. Well, you can argue that they don't need a hearing for that. I mean, that's a legal argument. Sure you do, because here they already made the decision. It's a fait accompli. It's done. It's a done deal. Well, even if this is in the regulation, it doesn't make any sense. Does that make it? I mean, I'm having trouble getting my head around this. It seems to be a moving target because you're really arguing a contract claim, promissory estoppel, detrimental reliance claim, but the two issues that you've briefed before us elevate promissory estoppel to a constitutional taking. But the law degree itself has not been taken. It's been circumscribed with some regulations. Now, you can argue it's so circumscribed that the regulation itself is tantamount to a taking, and I guess that is what you're arguing. But the due process part you're talking, you're spinning into that. It seems to me all the cases that would go to that Ruffalo and Wilmer are cases that are very different. It's a disbarment case and a preclusion from practicing law, not a regulation, again, as an employer on the part of employees about practicing law. Should a state trooper be able to go into court and represent a criminal defendant in a criminal prosecution? Of course not. We understand that there's reasonable restrictions placed on any outside job. That's why you can't work in casinos or bars or anywhere else. If a state trooper went to law school wanting to be a criminal defense attorney and thinking that, you know, I can kind of subsidize myself and decide I can take some criminal cases and be a criminal defense attorney, why shouldn't that be a constitutional deprivation? That trooper went to law school. There's no expectation in that case, Your Honor. I don't think anyone expected to be able to do criminal defense or criminal prosecutions or anything of that nature. It was always understood. Because there you're representing your employer, aren't you? Why couldn't they be in some county that, assuming they have part-time prosecutors in some counties, I assume they do, as they do in Pennsylvania, why couldn't a state trooper with a law degree decide they wanted to be a criminal prosecutor? Theoretically it's possible, but there was certainly no expectation, and I couldn't argue, you know, today that there was. So they wouldn't have the type of claims. What do they want to do? Generally speaking, it's real estate closings and wills. That's what they generally do because those things, there's very little possibility of any kind of problems, and they've been doing it for years and years and years without any problem. There's never been any problem. Did the union take this up with whatever regulatory agency came out with this regulation? Yes, of course, and we also took it to the Supreme Court of New Jersey who found that there was no ethical problem in troopers serving as attorneys, and I would understand them to be – What was the nature of the case before? What was the issue before the Supreme Court of New Jersey? We took this very same regulation and asked the Supreme Court for an interpretation as to whether or not attorneys, trooper attorneys, could practice as attorneys. And what did New Jersey say? They said there was no problem. There's no ethical problem. But the question was just whether it was ethical, not whether New Jersey could do this? Correct. All right, we'll hear from you right now. Thank you. Mr. Bukoski. If it may please the Court, my name is Robert Stoloff. I'm an assistant attorney general, and I represent the state of New Jersey. Let me start by addressing the question that was posed regarding what was the nature of the encouragement here. I recognize that we're here on an appeal from the granting of a motion to dismiss. So we have to take the pleadings as true. And there were questions and there were arguments put to the district court that were based specifically on the pleadings. The allegation was, in the complaint, is that troopers weren't encouraged to go to law school. In terms of reliance, the allegation was stated in the passive voice. That is that they did so with the understanding and expectation that they would be able to practice law secondary to their primary employment. That was stated in the passive voice. It was pointed out to the district court that there were no allegations in the complaint that the state did anything to make any kind of promise to the troopers that they'd be able to continue with what had been a practice which permitted them to engage in the secondary practice of law. But it does say that they detrimentally relied. They would be able to pursue the practice of law, I mean, presumably, and that that would continue. And Judge Wolfson herself said, you know, if they openly encouraged them, it would be a different matter. Well, isn't the pleading enough to get by so we can have discovery as to what really did happen here? Was there something that would give rise to, like a promissory estoppel, that would give rise to a liberty interest or some kind of detrimental reliance? But the allegation went no more than that they were encouraged to go to law school. It didn't say they were encouraged to go to law school with a promise that they would be able to engage in the practice of law for remuneration. There's also a second answer to this question, and that is there's nobody in state government that would have had the authority to make that promise. There is the appellate division has held that codes of ethics are not negotiable. What not negotiable means is that we can't enter into a contract agreeing to any provision of the code of ethics. The case in which they did that was actually a secondary employment case where there had been a history of tax auditors for the state engaging in a practice of providing assistance not with state tax returns but with federal tax returns. That had been a longstanding practice. The code of ethics for the Department of Division of Taxation was changed, prohibiting that continued practice. But it's not so much the facts of the case as the ultimate finding that questions of what goes in a department's code of ethics is a non-negotiable provision. When it's non-negotiable, what it means is that the state cannot bind itself going into the future to any provision that's in its current code. A new attorney general can come into office and can decide to set new standards. Given the over-inclusiveness and under-inclusiveness of this particular regulation, would it not be arbitrary? I think in terms of the issue of it being under-inclusive, that is that it only applies to lawyers and not other practices, there's a couple of points to be made. The first point is that it applies to all employees of the department, which is the same prohibition, by the way, that exists in the Department of Justice's code of ethics. I don't have the site here which is codified in the CFR. Pardon? You can practice law. I cannot. I've never been allowed to. The change here was, and I've been prohibited from doing that for 34 years now, Your Honor, but the change here was that it was extended to all employees of the department. As I said, it's very much like the prohibition that applies to all employees of the Federal Department of Justice. What happened in the Pennsylvania Supreme Court, I mean the New Jersey? What happened in the New Jersey Supreme Court is that the question was posed by the plaintiffs in this case to the court as to whether or not their practice of law while employed as state troopers would violate the state New Jersey's rules of professional conduct. And the New Jersey Supreme Court took that certification. They don't take all of our certifications. Actually, it wasn't the Supreme Court that took it. They received a letter from the Advisory Committee on Professional Ethics, and the letter concluded by, of course, this response considers only the rules of professional conduct and does not address prohibitions on the practice of law that may be based on the conflict of interest law or on the Department of Law and Public Safety managerial prerogative. And New Jersey, the Supreme Court answered that letter? It was only the Advisory Committee on Professional Ethics. That's all? That's all. It was never argued before the New Jersey? Never argued before the Supreme Court. Oh, I got a different impression. And the last sentence relates to a decision that had only recently come out of the Supreme Court, I think really months before this, where they had held that the state was free to impose ethical standards on its employees that were different, not less, but different or greater than imposed by the rules of professional conduct. Shouldn't they be reasonable standards? Pardon? Shouldn't they be reasonable and not arbitrary? Well, anything a state agency does has to be reasonable and not arbitrary. Well, why isn't this arbitrary? What is the tension between a state trooper representing somebody in a real estate closing and that person's obligations to the state of New Jersey because they're a trooper? Well, some of that goes to the heart of what a lawyer's relationship with their client is. And whereas a trooper's primary duty is to the public and to enforce the law, a lawyer's primary duty is of loyalty and confidentiality to a client. The Attorney General can reasonably be concerned, it's hardly unusual, that when an individual is with a lawyer and it's their lawyer, whether it be for a real estate or a will, they may raise other questions to them that could involve criminal conduct, for example. You mean like I was just picked up for drugs? Yes, exactly, Your Honor. I mean, as somebody who can't practice law and is regularly telling people I can't advise them, I know that when people have a lawyer with them, they'll often pose questions to them. There also can be the possibility, and it's a concern not with just the actual conflict, but with the appearance of conflict. And a trooper can be representing somebody with a will or a real estate transaction that is under criminal indictment or under criminal investigation. There are no instances of that. There's no evidentiary basis here. Well, there's no instances of it, but in terms of addressing the case law says that the Attorney General can engage in essentially reasonable speculation as to what could happen. And the concern here is with appearances, not what may have actually happened. And the fact that these relationships are so confidential means that there really would be no way the Attorney General could ever know if they did happen. Well, was Judge Wolfson wrong when she said it would be different if they were openly encouraged, et cetera, et cetera? Was she wrong when she said that? Because she said that, and yet if that's the case, then maybe this should have gone towards some discovery. No, I think there was another part of her decision where she also cited the case that I cited the court to just now, where she recognized that it was also non-negotiable. So there was a little bit of an inconsistency in the opinion. I think to the extent that the opinion suggests that open encouragement would create some kind of property interest, I think that would be mistaken. Although that was the case in the, is it the Stana case? The Stana case? Yeah. Well, the Stana case, what you had was, it was more than encouragement. There was an existing policy in place and, I mean, it's actually, I was prepared to address Stana because I know it's probably the closest one that raises questions about a due process. There were specific admissions. There was a policy in place and there were specific admissions by the administrator of the policy that she actually told Ms. Stana that once you're on the list, you are on that list for two years or four years. All right. Well, here we have a complaint. We haven't gotten to whether there were admissions or discovery or depositions of people as to what actually went on. Well, but the difference there was, is what that policy was, was under a state law that gave rather broad discretion to the school district to have this kind of policy. In this case, the statutory delegation to individual employees of the Division of State Police, or even the Attorney General for that matter, does not include a delegation of authority to make a binding into the future commitment as to what the rules of ethical conduct will be and what the rules governing secondary employment will be. If I can briefly address then the kind of rational basis that can provide the underlying justification for this rule, I mean, it just starts with the basic premise that you've got a department whose primary responsibility, an attorney general whose primary responsibility is the enforcement of the criminal laws, the enforcement of the civil laws, the representation of all of state government. It is an agency that has more interaction with lawyers and with the judiciary, a judiciary that regulates the conduct of lawyers than any other department in state government by far. And it is also a position that I've always viewed and I've always understood carries great prestige with it. The attorney general is a very prestigious position within state government. It's one of only three constitutional officers. We have the governor and the executive branch, the governor, the secretary of state, and the attorney general. The office of state trooper carries great prestige. And it's just reasonable for the attorney general to conclude that she doesn't think it's appropriate to lend the prestige of her office and the prestige of the office of state trooper, which these individuals have to the private practice of law. So there's also, as I think I've already mentioned, the conflicting duties between what lawyers in private practice are responsible to do and what state troopers are to do. One is to uphold the law. One is to maintain confidentiality and show loyalty to the client. Well, what about the exceptions then that are allowed? They can represent their own immediate family without compensation. Don't you run into the same problem there? Well, I think that the attorney general is allowed to balance different considerations here. And I think the risks, first of all, the family members already have access to the state trooper who's a lawyer. So the kind of informal reaching out for advice that you might have with somebody that you hire as your attorney is already there. I mean, you can't prevent any circumstance where or can't, you know, wall off state troopers so there's no circumstance under which they may come across information of a crime which people may suspect they wouldn't report. So you just can't deal with everything. And basically, I mean, it would be an odd thing to say to the state troopers, the only way we can prohibit you from practicing law for compensation is also to prohibit you from representing close family members, which is the only kind of representation that's permitted. And I think quite clearly that would be the answer if we viewed that as a distinction that was inappropriate. I think the Supreme Court addressed that kind of thing in a different setting, but in Clement versus Flashing where the issue was, well, you didn't prohibit all the judges from running for office. It was only the judges who had a term that wasn't going to expire. The court said you don't have to attack every possible evil. And I think this decision involves some consideration for the interest of the state troopers, one that posed a lot less risk of either an appearance to the public or actual conflicts arising. Thank you. Mr. Bukowski, you served some time, I think. Very brief. I know lunch isn't posing on us. I would just like to comment about the expectation about what these troopers understood to be occurring when they did what they did. It's a major undertaking to go to law school for the three to six years that they took time away from themselves and their family, the expense, the out-of-pocket expenses, and it's just hard. Everyone in this room understands. Yeah, I know, and I taught and still do. But they got something. They learned something in return. I would beg to suggest that if they understood it was just the learning that they would get out of it, that they wouldn't go down that path for six years and sustain the kind of, you know, hardships that they did and the challenges that they did. That's basically the opportunity for secondary employment. As an attorney, and I think that's critical. I think, you know, you can't make the same arguments for any old job. You can't say, well, I would like to have been a shopkeeper somewhere. Nobody has that expectation. But if you go to law school and get a law license, you do have that expectation. And the state did lead us down that path, and I think at that point a property interest develops and that they do not have the ability to simply wave the magic wand and say, well, we give it and we take it away. I think at that point some process has to come into play. It can't simply be. Well, what would the process be? I don't understand that. What would the process be? Well, I mean, I think it could be as, you know, I don't, we haven't gotten to that point. But I would say this. You say they violated their due process. What process were they entitled to? The way I would understand it to have to work was certainly they have to give notice and say, we're about to take away your law licenses. Okay, yeah. What do you have to say about it? And I think that they probably couldn't unilaterally make the decisions themselves. I think they probably would have to submit that to some kind of neutral arbiter, at least in the first instance. And would say what? And they would say, we went to law school with the expectation that we could practice law on the side, right? Right. Okay. And I think they could bring out the whole story. And the arbiter says, well, the state is acting as an employer, as a regulator. And so, you know, we're sorry, but the state has the right to do that. I could easily see some neutral person saying what the state did here is unreasonable and really you've overreached and you have to consider what you're doing here, that it's not reasonable. I could really see that. And, in fact, Judge Wolfson suggested that, that it was very problematic. And when you talk about, you know, the reasons why they try to rationalize what it is, if you look at them, they're very, very weak. And everybody understands that. It's really a stretch. They can't do real estate closings as an attorney, but they could do it as a title closer. They can't produce a will as an attorney, but they could do it in simply selling it to the staples store. There's really no justification there why one is no good and one is. It's still practice of law, isn't it? I'm sorry? It's still the practice of law if they sell it to the staples store. It's still a practice of law. Well, then it's just a form, Your Honor, and they're just creating a form and they're giving it out. As an attorney? Well, you could do it as a non-attorney. Anyone can go to the staples and buy it today. You know, there's also no restrictions on any other profession about this and where these problems that they suggest can occur could pop up at any time. You're going to learn some vital bit of information that somehow poses a security risk to the state. Certainly in other professions that could happen much more frequently and with much greater susceptibility to problems. If you're working for somebody off-duty and it's a very high-paying job and you learn that the high-paying job that you have, the employer is conducting some kind of misconduct or illegal conduct, who's more likely to come forward, that fellow who's about to lose his high-paying job or the attorney who knows he has an ethical obligation to try to work through if he obtained information about illegal conduct to bring that to the proper authorities. Where is there a greater conflict? I would suggest not with the responsible attorneys who could limit themselves and simply in every case they could say, I am only representing you for this will. If you tell me something else, that you murdered your brother the other day, that is not protected by the privilege. You're not telling me how the person died whose will this is. Right. What is the agency? You mentioned a hearing is for some kind of a mediator or tribunal. In New Jersey, what is that? What does it look like? A lot of these disputes go to the Office of Administrative Law when you have these disputes between different agencies. Certainly they could send it there for at least a recommended decision, someone that can go through the record and say, this is what I think should happen in this particular case. Now, ultimately, at the end of the day, could the state prevail and have its way? It's possible. They may be able to convince everyone that what they have done is entirely reasonable and is required because of the extreme interests that are at stake here. But I would suggest, I think, given the opportunity to reconsider that people probably would. Thank you. Thank you. Thank you very much, Mr. Vukoski and Mr. Stolop. Thank you both for your helpful argument. Thank you.